IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JONATHAN J. EDMISTEN,            )
                                )
            Plaintiff,           )
                                )
      v.                         )        Case No. 07-3116-JWL
                                )
DAVID R. McKUNE, et al.,         )
                                )
            Defendants.          )
                                )
_____ )

## MEMORANDUM AND ORDER

Plaintiff Jonathan Edmisten, an inmate acting pro se, has brought suit against various Kansas corrections officials and medical practitioners under 42 U.S.C. § 1983, alleging a violation of the Eighth Amendment with respect to his dental care in prison, and under Kansas state law.  This matter comes before the Court on the motion to dismiss by defendants Kansas Department of Corrections ("KDOC"), Roger Werholtz, David McKune, Ray Roberts, and Ky Hoang (collectively, "the State defendants") (Doc. # 94); the motion to dismiss by defendant Josie Norris (Doc. # 60); and the motion for summary judgment by defendants Correct Care Solutions ("CCS"), Dale Davis, Fred Cannon, Kim Palmer, and Adam Edelman (as sued in his official capacity only) (collectively, "the CCS defendants") (Doc. # 87).  For the reasons set forth below, the State defendants' motion is granted in part and denied in part; Dr. Norris's motion is granted; and the CCS defendants' motion is denied without prejudice.  The Court orders

that counsel be appointed for plaintiff, and plaintiff is granted leave to amend his complaint, in accordance with this opinion, within 30 days after appointment of counsel. The parties will then be permitted discovery as ordered by the Magistrate Judge.

## I.      **Background**

Plaintiff is an inmate at the Lansing Correctional Facility ("LCF") in Lansing, Kansas, which is operated by KDOC.  Plaintiff has brought suit under section 1983, alleging that defendants violated the Eighth Amendment to the United States Constitution by their deliberate indifference to his serious medical and dental needs.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  Plaintiff also alleges that defendants conspired to deprive him of his rights under the Eighth Amendment.  Finally, plaintiff states in his complaint that he is also alleging a tort claim under Kansas state law (he specifically makes reference to medical malpractice), for which he invokes the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

Plaintiff names as defendants both KDOC and CCS, who contracts with KDOC to provide medical services at KDOC's prisons.  Plaintiff also names as defendants the following persons, in both their "official" and "personal" capacities:

| | |
|---|---|
| Roger Werholtz | KDOC Secretary. |
| Ray Roberts | Warden at El Dorado Correctional Facility ("ECF") in El Dorado, Kansas. |
| David McKune | Warden at LCF. |

| Josie Norris | Former CCS Medical Director. |
| Adam Edelman | Former CCS Medical Director. |
| Dale Davis | CCS Director of Dental Services. |
| Fred Cannon | Dentist at ECF. |
| Terry Jones | Physician at ECF. |
| Ky Hoang | Physician at LCF. |
| Joseph Martin | Physician at LCF. |
| Kim Palmer | Nurse at LCF. |

All defendants have appeared in the action except Dr. Martin, who has apparently been served and who has been ordered to show cause why default judgment should not be entered (Doc. # 117); and Dr. Edelman, for whom CCS has accepted service only to the extent Dr. Edelman was sued in his "official" capacity.

Plaintiff filed his complaint on May 1, 2007. On November 15, 2007, the Court granted plaintiff leave to proceed *in forma pauperis*; denied without prejudice plaintiff's motion for appointment of counsel; denied plaintiff's motions for a temporary restraining order and preliminary injunction; ordered KDOC to prepare a *Martinez* report; ordered that defendants' responses to the complaint were not due until after officials filed the report; and ordered that plaintiff could not commence discovery until he had received and reviewed defendants' responsive pleadings and the report. (Doc. # 15).[1] With

---

[1]Plaintiff has filed an interlocutory appeal from the Court's denial of his motions
(continued...)

respect to the required report, the Court directed officials at LCF to review plaintiff's complaint to ascertain the facts and circumstances and to consider whether KDOC officials should take any action.  The Court ordered that "[s]tatements of all witnesses shall be in affidavit form," and that "[c]opies of . . . official documents and, wherever appropriate, the reports of medical . . . examinations shall be included in the written report."  Finally, the Court authorized KDOC officials "to interview all witnesses having knowledge of the facts, including the plaintiff."

KDOC officials filed the *Martinez* report on March 14, 2008.  The report does not include plaintiff's medical records, but instead includes an affidavit by CCS's Regional Medical Director summarizing plaintiff's treatment.  The report also includes the transcript of an interview with plaintiff,[2] but there is no indication that any other interviews were conducted.  Defendants subsequently filed the instant motions.  There is no indication that the parties have conducted any discovery.

## II.   Applicable Standards

The court will dismiss a cause of action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim only when the factual allegations fail to "state a claim to relief that is

---

[1](...continued)
for injunctive relief.

[2]The interview was not conducted under oath, and plaintiff declined to swear to the accuracy of the interview transcript.

4

plausible on its face," *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), or

when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The

complaint need not contain detailed factual allegations, but a plaintiff's obligation to

provide the grounds of entitlement to relief requires more than labels and conclusions;

a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic*, 127

S. Ct. at 1964-65.  The court must accept the facts alleged in the complaint as true, even

if doubtful in fact, *id.* at 1965, and view all reasonable inferences from those facts in

favor of the plaintiff, *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).  Viewed as

such, the "[f]actual allegations must be enough to raise a right to relief above the

speculative level." *Bell Atlantic*, 127 S. Ct. at 1965 (citations omitted).  The issue in

resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but

whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz

v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236

(1974)).

Summary judgment is appropriate if the moving party demonstrates that there is

"no genuine issue as to any material fact" and that it is "entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).

5

### III.   **Plaintiff's Sworn Complaint**

In his complaint, plaintiff has related the following facts under penalty of perjury:

Plaintiff was admitted to ECF on May 18, 2006, having received a 39-month prison sentence.  At that time, plaintiff told the intake nurse that he had had bone cancer and had had a prosthesis placed in his jaw in 1999; that he had been prescribed a daily regimen of antibiotics since that time to prevent infection; that an infection was in fact developing; and that it was imperative that he continue to take antibiotics.

On May 25, 2006, plaintiff's jaw locked, and he was seen by Dr. Cannon, the dentist at ECF.  An x-ray revealed a dislocation and break of the prosthesis, and Dr. Cannon referred plaintiff to Dr. Cole, an oral surgeon in Wichita.  Dr. Cole stated that plaintiff needed immediate surgery to replace the prosthesis, although an MRI would have to be performed first, and he prescribed pain medications, antibiotics, and a special soft diet for plaintiff.  Dr. Cole also indicated that he could not do the surgery, and he recommended that KDOC transport plaintiff to New Orleans for surgery by Dr. Kent, a noted oral surgeon who had originally installed plaintiff's prosthesis.

Upon his return to ECF, plaintiff received only one dose of pain medication, and he was told that Dr. Jones had ordered that he not be admitted to the infirmary.  Consequently, plaintiff did not receive the prescribed pain medications, antibiotics, and special diet, and he suffered great pain.  Nor was plaintiff given the required MRI.  At the end of May, plaintiff saw Dr. Cannon, who asked Dr. Jones why plaintiff was not in the infirmary and indicated that plaintiff should receive his prescribed treatment.

Plaintiff was again taken to see Dr. Cole, who unsuccessfully tried to relocate plaintiff's jaw. Dr. Cole also told plaintiff that he had informed ECF officials that the MRI needed to be completed forthwith.

Again back at ECF, plaintiff was placed in the infirmary, but Dr. Jones told plaintiff that he did not believe that an MRI was necessary and would be a waste of money. Plaintiff responded that he had had successful MRIs in the past and that Dr. Cole had ordered the procedure. After ten days, plaintiff was discharged from the infirmary, and he no longer received the prescribed medications, antibiotics, or special diet. On two occasions, Dr. Cannon placed plaintiff back in the infirmary, but Dr. Jones discharged him each time.

On July 3, 2006, plaintiff was given an MRI. On approximately July 6, 2006, plaintiff returned to see Dr. Cole, who again tried to reduce the prosthesis without success. Upon his return to ECF, plaintiff received the prescribed medications only occasionally. On July 20, 2006, Dr. Cole again tried and failed to reduce plaintiff's jaw. Dr. Cole stated that although KDOC wanted him to perform the needed surgery, he would not do so because he lacked the necessary expertise. Dr. Cole further stated that KDOC did not understand that once the prosthesis was removed by surgery, it was essential that it be replaced; that such a procedure was very expensive; and that KDOC would not likely follow through with a new prosthesis. He also stated that he had informed KDOC that plaintiff needed the surgery immediately and that the infection could spread if not addressed, thereby causing great harm. Dr. Cole had informed

KDOC that the case was very complex, that surgeons in the surrounding area would not take this case, and that Dr. Kent should perform the surgery.

Between July 20 and September 6, 2006, plaintiff remained in the infirmary at ECF, but he was not given the prescribed medications and diet.  His infection became so severe that he could not perform daily activities, he suffered great pain, he could not eat and lost weight, and he even became disoriented and hallucinated such that he could not function for several days.  Plaintiff filed administrative grievances, which were ignored.  Eventually Dr. Cannon told plaintiff that plaintiff would be transported to Kansas City for removal of the prosthesis and that he would receive a replacement, although plaintiff had to drop his pending grievance.

On September 6, 2006, plaintiff was transferred to LCF.  He was housed in the infirmary, but he was not given his proper medications or diet.  On approximately September 10, 2006, plaintiff was taken to a Leavenworth hospital, where a doctor unsuccessfully tried to reduce plaintiff's jaw under anesthesia.  He was then transported to a hospital in Kansas City, Missouri, but the surgeon there refused to perform the removal of the prosthesis because of the complexity of the procedure.  After his return to the LCF infirmary, plaintiff received only occasional pain medications; he was denied his proper diet; his infection worsened; he suffered increased pain and weight loss; and he had no daily activity.

On October 23, 2006, plaintiff was seen by Dr. Kent in New Orleans.  After examining plaintiff, Dr. Kent stated that because the infection had not been properly

treated, it was useless to do anything other than to remove the prosthesis, and that plaintiff's only option was a new prosthesis. Dr. Kent indicated that he would clean out the infected area and let it heal, but that without a replacement, plaintiff would be left without a functional jaw, would be unable to eat solid foods or open or close his jaw, would lose the ability to speak clearly, and would suffer great pain, which would increase over time. Dr. Kent performed the removal of the prosthesis and instructed that plaintiff return in ten days for follow-up treatment.

Plaintiff returned to the LCF infirmary, but after one day he was taken off his pain medications. A nurse told plaintiff that Dr. Edelman, the CCS director, had ordered that plaintiff's pain medications be discontinued. Plaintiff was told that he would not be returned to Dr. Kent for a follow-up appointment. Dr. Martin told plaintiff that his new prosthesis was being made. On November 27, 2006, Dr. Martin told plaintiff that he had been ordered to remove plaintiff's medical restrictions so that plaintiff could work. Plaintiff believes that this act was in retaliation for plaintiff's filing grievances. In November and December 2006, plaintiff suffered a severe infection after his antibiotics were discontinued, received pain medications only occasionally, and was not given a special diet. Plaintiff suffered extreme pain and began losing his ability to speak clearly because he had lost all movement in his jaw. Plaintiff's grievances were ignored.

On December 29, 2006, plaintiff was transferred back to ECF, to a maximum security facility, purportedly for medical reasons. Dr. Cannon told plaintiff that he had not requested the transfer and that nothing could be done for plaintiff. Dr. Cannon stated

that when he previously told plaintiff that he would receive a new prosthesis, he was repeating what he had been told by officials in Topeka. Dr. Cannon further stated that everything had been approved before Dr. Edelman took over at CCS, but that since that time officials had learned that the new prosthesis would cost $100,000, and Dr. Edeleman told Dr. Cannon that CCS would not pay that price. Dr. Cannon told plaintiff that he felt that plaintiff was being denied proper treatment, but that there was nothing Dr. Cannon could do. It became clear to plaintiff that KDOC officials and CCS were conspiring to deny plaintiff his needed prosthesis.

While at ECF, plaintiff was put to work, and he was denied a proper medical diet and pain medications. He filed grievances, including a complaint that he was suffering retaliation for having filed earlier grievances. An official told plaintiff that he had to remain at ECF because of his jaw and because he had filed numerous grievances, and no other institution would accept him.

On March 7, 2007, plaintiff was transferred back to LCF. He was given a job pushing a hand mower for six hours a day in extreme conditions. Plaintiff became sick from this activity and suffered increased blood pressure, back and leg pain, and headaches. A nurse relieved plaintiff of his mowing job, but another official stated that, although another job would be found, plaintiff would regret having filed grievances. At LCF, plaintiff has not received proper medical care. At one point, defendant Palmer told plaintiff that he was not worth the $100,000 needed for a new prosthesis, that plaintiff could get whatever surgery was needed after his release, and that plaintiff would have

to make do until then.

### IV.   State Defendants' Motion to Dismiss

#### A.   *Claim for Deliberate Indifference*

The State defendants seek dismissal of plaintiff's claims under Fed. R. Civ. P. 12(b)(6).  Defendants first argue that plaintiff has not alleged facts sufficient to show deliberate indifference by anyone to plaintiff's serious medical needs in violation of the Eighth Amendment.

The Tenth Circuit has set forth the following standard for considering a motion to dismiss a pro se plaintiff's claim of deliberate indifference:

> Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.  In addition to construing a pro se complaint liberally, this court must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff.

*Kikumura v. Osagie*, 461 F.3d 1269, 1291-92 (10th Cir. 2006) (citations and quotations omitted).

In *Kikumura*, the Tenth Circuit also set forth the standards that govern claims under section 1983 for deliberate indifference to serious medical needs in violation of the Eighth Amendment:

> It is well established that prison officials violate the Eighth Amendment if their deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.  This

is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care.  At the same time, however, medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  A complaint about an inadvertent failure to provide medical care or that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Rather, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

The test for a "deliberate indifference" claim under the Eighth Amendment has both an objective and subjective component.  The objective component of the test is met if the harm suffered is sufficiently serious to implicate the Cruel and Unusual Punishment Clause.  The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety.

. . .

To satisfy the objective component of a deliberate indifference claim arising under the Eight Amendment, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension.  The purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering.  Consequently, we look to the alleged injury claimed by the prisoner, and ask whether that harm is sufficiently serious.

When the prisoner's Eighth Amendment claim is premised on an alleged delay in medical care, the prisoner must show that the delay resulted in substantial harm.  That "substantial harm" can be the ultimate physical injury caused by the prisoner's illness, so long as the prisoner can show that the more timely receipt of medical treatment would have minimized or prevented the harm.  The "substantial harm" can also be an intermediate injury, such as pain experienced while waiting for treatment and analgesics.  Although not every twinge of pain suffered as a result of delay in medical care is actionable, when the pain experienced during the delay is substantial, the prisoner establishes the objective element of the deliberate indifference test.

. . .

12

> The subjective component of a deliberate indifference claim requires an inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment. It is not enough to allege that prison officials failed to alleviate a significant risk that they should have perceived but did not. To show the requisite indifference, [the prisoner] must establish that defendants knew he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measure to abate it.

*Kikumura v. Osagie*, 461 F.3d 1269, 1291-93 (10th Cir. 2006) (citations and quotations omitted).

The State defendants argue that, according to the facts alleged, plaintiff received adequate and ample medical care relating to his jaw and prosthesis. Defendants note that plaintiff was immediately seen by a dentist upon suffering complications; that he was taken to a specialist in Wichita within days, and was returned there twice more; and that he was taken to two hospitals and then to a renowned specialist in New Orleans to address his jaw and prosthesis problems. Defendants argue that plaintiff's mere disagreement with the decision not to replace the prosthesis is not sufficient to show deliberate indifference. Defendants also argue that plaintiff has not sufficiently alleged that the lack of treatment worsened his initial bone cancer and infected jaw, and thus that the requisite causation is lacking.

The Court disagrees and concludes that plaintiff has alleged facts sufficient to state a cause of action here. Plaintiff has alleged that he was denied prescribed and necessary antibiotics, which led to a severe infection, and that as a result, plaintiff could not be treated except by removal of the prosthesis. He has further alleged that he was

denied prescribed pain medications and diet, and was not allowed to remain in the infirmary as needed.  He has alleged that he did not immediately receive an MRI or surgery or ever receive a new prosthesis, as recommended by Dr. Cole.  Plaintiff alleged that he was not given the follow-up appointment ordered by Dr. Kent.  Dr. Cannon allegedly stated that plaintiff was not receiving proper care.  Dr. Kent allegedly stated that plaintiff's infection had not been properly treated.

Moreover, the alleged deprivation is sufficiently serious, as plaintiff has alleged that his lack of treatment caused him great pain, an inability to eat or speak clearly, weight loss, disorientation, hallucinations, and an inability to perform daily functions. The seriousness of plaintiff's situation is buttressed by the alleged statements by Dr. Cole and Dr. Kent concerning the harm that will ensue if plaintiff is not properly treated.

The subjective element of plaintiff's claim is satisfied by plaintiff's allegations that officials were told by Dr. Cole and Dr. Kent of the substantial risk to his health, as well as by the allegations that an official conditioned treatment on plaintiff's withdrawal of a grievance, that officials retaliated against plaintiff for filing grievances (and told plaintiff so), that they removed his medical restrictions, and that one official told plaintiff that he was not worth the cost of the treatment.

Finally, plaintiff has sufficiently alleged that the denial of treatment caused him pain and other effects.  Causation is further supported by Dr. Kent's alleged statement that improper treatment of plaintiff's infection limited his treatment options. The State defendants are not entitled to dismissal of plaintiff's Eighth Amendment claim on this

basis.

B.   *Supervisor Liability*

Secretary Werholtz, Warden McKune, and Warden Roberts next argue that plaintiff has not alleged facts showing their personal participation in the alleged constitutional violation.   Under section 1983, government officials are not vicariously liable for the misconduct of their subordinates.   *See Serna v. Colorado Dep't of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006).

> Liability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence.   To be guilty of "deliberate indifference", the defendant must know he is creating a substantial risk of bodily harm.   To establish a supervisor's liability under § 1983 [the plaintiff] must show that an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.

*Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (citations omitted).   Inaction by a supervisor, including the denial of grievances and refusal to take corrective action, may establish the necessary acquiescence of the supervisor in the constitutional deprivation.   *See Strope v. Cummings*, 2008 WL 508698, at *2 (D. Kan. Feb. 22, 2008); *Strope v. Collins*, 492 F. Supp. 2d 1289, 1301 (D. Kan. 2007).

Plaintiff has not alleged facts indicating that these defendants were actively involved in his medical care.   Rather, plaintiff has alleged that Secretary Werholtz was "made aware throughout the past 12 months" through documentation and administrative grievances of plaintiff's need for proper medical care and treatment, but that he refused

15

to protect plaintiff and provide adequate care, and that the Secretary had "total responsibility" for plaintiff's care. Plaintiff has alleged that Warden McKune "was made fully aware" of his medical needs through documentation and administrative remedies, that the warden is the authority at LCF, and that the warden failed to protect him or provide adequate care. Plaintiff has alleged that Warden Roberts showed deliberate indifference to his medical needs by denying and not responding to plaintiff's grievances.

As noted above, the denial of grievances while in a position to take corrective action may support a claim against a supervisory official for deliberate indifference. In this case, however, plaintiff has not alleged any details concerning the timing and nature of these defendants' knowledge of the decisions regarding his medical care. Thus, the question whether, under a liberal reading of the complaint, plaintiff has sufficiently stated a claim against these supervisory defendants for deliberate indifference is a close one. Because the Court grants plaintiff leave to amend his complaint, *see infra* Part IV.C, the Court will grant the motion to dismiss the section 1983 claim against defendants Werholtz, McKune, and Roberts, but allow plaintiff to state additional facts in his amended complaint to support his claim of supervisor liability.[3]

---

[3]The Court rejects the State defendants' argument based on Kan. Stat. Ann. § 75-5249. That statute only provides that the Secretary of Corrections shall employ or contract with a person to be the chief physician for each correctional facility, who will direct the operation and management of such institution's medical services. *Id.* The statute does not relieve KDOC officials of any duties concerning inmates' health or
(continued...)

C.     <u>Conpiracy Claim</u>

The State defendants next argue that plaintiff has failed to allege facts sufficient to state a conspiracy claim. In his complaint, plaintiff has only conclusorily alleged that various defendants conspired to deny him medical treatment or to deprive him of his rights under the Eighth Amendment. He has not alleged any facts showing the existence or details of any agreement between or among any particular defendants. Accordingly, the Court dismisses plaintiff's conspiracy claims against the State defendants.

It has not been shown, however, that plaintiff could not eventually prevail on such a claim or that it would be futile to allow plaintiff the opportunity to amend his complaint. Therefore, the Court grants plaintiff leave to amend his complaint, if appropriate, to state a conspiracy claim against the State defendants or other defendants, according to the schedule set forth below.[4]

D.     <u>Eleventh Amendment Immunity</u>

Finally, the State defendants argue that any claims against KDOC and any claims for damages against any state officials in their official capacities are barred by the Eleventh Amendment. Defendants are correct that the Eleventh Amendment prohibits

---

[3](...continued)
medical needs. To the contrary, the statute provides that each chief physician shall be under the Secretary's supervision and control. *Id.*

[4]In their motion to dismiss, the State defendants have not addressed plaintiff's tort claim under Kansas law. In amending his complaint to allege properly a state law claim against Dr. Norris, *see infra* Part V, plaintiff should also add any allegations needed to state such a claim against other defendants, including the State defendants.

17

any claim against a state agency such as KDOC. *See Buchwald v. University of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998).[5]  It is not clear whether plaintiff has attempted to sue KDOC in this case—although he lists KDOC in his case caption, the agency is not referred to as a defendant in the body of the complaint.  At any rate, any claim asserted by plaintiff against KDOC is dismissed.

The Eleventh Amendment also prohibits claims for damages against state officials sued in their official capacity. *See id.*  In his complaint, plaintiff has sued various state officials in both their official and individuals capacities, seeking both damages and injunctive relief.  On the basis of the Eleventh Amendment, the Court dismisses plaintiff's claims for damages to the extent asserted against state officials in their official capacities.[6]

### V.      Dr. Norris's Motion to Dismiss

Defendant Josie Norris moves to dismiss plaintiff's claims under Fed. R. Civ. P. 12(b)(6), on the basis that plaintiff has failed to allege facts sufficient to show her personal participation in the alleged constitutional violation or her breach of a duty to

---

[5]In addition, a state is not a "person" subject to suit under section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989).

[6]The State defendants did not distinguish between plaintiff's section 1983 claim and his state law tort claim in their motion.  There is no reason not to apply the Eleventh Amendment also to any state law claim asserted by plaintiff. *See, e.g.*, *Fox v. Wichita State Univ.*, 489 F. Supp. 2d 1216, 1232-33 (D. Kan. 2007) (Kansas Tort Claims Act does not waive Eleventh Amendment immunity against suits in federal court).

plaintiff under state law.  At the beginning of his complaint, plaintiff has identified Dr.

Norris as the Medical Director of CCS at the time his claims arose, with total authority

over CCS medical providers in KDOC facilities.  In the main fact section of his

complaint, plaintiff has made no reference to Dr. Norris other than to allege that,

according to Dr. Cannon, everything was approved for plaintiff before Dr. Edelman took

over as head of CCS.  Finally, plaintiff has alleged as follows:

> Defendant Josie Norris, M.D. by failing to provide plaintiff with the
> adequate medical care and treatment has exhibited deliberate indifference,
> reckless disregard, and malicious intent, to plaintiff [sic] serious medical
> condition and needs, in controvention [sic] of plaintiffs [sic] right to be
> free from cruel and unusual punishment[.] The staff dentist at [ECF] and
> the oral surgeon made the determination, that plaintiffs [sic] health would
> be adversley [sic] affected by the lack of the T.M.J. internal prosthesis,
> further defendant ignored the oral surgeons [sic] recommendation for
> prescribed treatments[.]  [D]efendant conspired, with other defendants to
> deny plaintiff much needed medical treatment, was deliberately indifferent
> to those needs by denying plaintiff, the replacement of the internal
> prosthesis which plaintiff needs for daily activities, to be able to
> open/close jaw, eat the solid foods, speak clearly, be free from pain, by
> denying plaintiff of the prosthesis defendant has from May 23, 2006
> through the present date caused plaintiff physical and psycological [sic]
> injuries.

The Court agrees that plaintiff has failed to state any claim against Dr. Norris.

Plaintiff has only conclusorily alleged deliberate indifference and conspiracy by Dr.

Norris, without alleging any facts that Dr. Norris knew of or participated in plaintiff's

treatment in any way.  Nor has plaintiff alleged any facts showing how Dr. Norris

breached any duty to plaintiff under Kansas law.  Accordingly, the Court dismisses all

claims against Dr. Norris.

It is not clear, however, that plaintiff could not allege additional facts that would support a claim against Dr. Norris or that amendment of the complaint would otherwise be futile. Therefore, the Court grants plaintiff leave to amend his complaint to state facts supporting claims, if appropriate, against Dr. Norris, according to the schedule set forth below.

### VI.   CCS Defendants' Motion for Summary Judgment

Instead of responding to plaintiff's complaint by filing an answer or a motion under Fed. R. Civ. P. 12(b), the CCS defendants have moved for summary judgment on plaintiff's section 1983 claims (the motion does not address any state law tort claim). Defendants make the following arguments in support of their motion: Dr. Kent's opinion that replacement surgery may not be warranted renders plaintiff's objection a mere disagreement, which is not actionable under the Eighth Amendment; the medical records do not support a claim of deliberate indifference prior to the removal surgery by Dr. Kent; plaintiff has not shown causation by establishing an additional injury from the lack of a replacement; plaintiff has not established a conspiracy; and plaintiff has not established a policy or custom as required for liability of CCS.

The Court declines to resolve this motion at this time, which is therefore denied without prejudice to a later filing. First, the Court notes that apparently no discovery has

yet taken place.[7]  Second, the *Martinez* report filed by KDOC officials did not comply with the Court's order for its preparation.  The report did not include plaintiff's medical records for the Court's review, but instead relied only on a short summary of those records prepared by CCS.  Plaintiff was interviewed, but interviews were not conducted of any other material witnesses, including Dr. Cannon, Dr. Cole, and Dr. Kent, whose testimony would be especially relevant in light of plaintiff's allegations.

Third, plaintiff's complaint, made under penalty of perjury, includes ample facts to support his claim, as set forth above.  In particular, the Court notes Dr. Cannon's admission that plaintiff did not receive proper care and Dr. Kent's statements that plaintiff's infection had not been treated properly and that he would suffer serious problems without a replacement.  Dr. Kent's statements would be hearsay and could not be considered in opposition to summary judgment, but it appears that plaintiff has not had the opportunity to seek discovery from Dr. Kent.

For these reasons, the Court concludes that the parties should engage in discovery on plaintiff's claims, and thus the Court need not resolve whether plaintiff's sworn complaint and other affidavits, by themselves, are sufficient to withstand summary judgment at this time.  Accordingly, the Court denies the motion for summary judgment

---

[7]Although plaintiff has not specifically requested relief under Fed. R. Civ. P. 56(f), he has argued that his claims are not suited for resolution at the "pleading stage," and he argued in response to the other motions that he should be permitted to conduct discovery to support his claims.  Accordingly, the Court liberally construes plaintiff's pro se responses to include a request under Rule 56(f).

without prejudice to the filing of another such motion after discovery.[8]

In light of the Court's rulings, plaintiff's substantial allegations, and the apparent complexity of the medical issues involved, the Court directs the Magistrate Judge to appoint counsel for plaintiff.  Such counsel shall then have 30 days from the date of appointment in which to file an amended complaint in accordance with this opinion. Defendants shall then have 20 days in which to respond to the amended complaint.  The Magistrate Judge is further directed to provide for discovery by the parties.

---

[8]The Court does agree with the CCS defendants that plaintiff's complaint does not sufficiently establish a conspiracy or a policy or custom by CCS.  Plaintiff is granted leave to amend his complaint, however, to support such claims if appropriate.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion to dismiss by defendants Kansas Department of Corrections ("KDOC"), Roger Werholtz, David McKune, Ray Roberts, and Ky Hoang (Doc. # 94) is granted in part and denied in part. All claims against KDOC are dismissed. All claims for damages against these defendants in their official capacities are dismissed. Plaintiff's conspiracy claim against these defendants and his deliberate indifference claim against defendants Werholtz, McKune, and Roberts are dismissed, although plaintiff is granted leave to amend his complaint to allege facts to support such claims as set forth herein. The motion is denied in all other respects.

IT IS FURTHER ORDERED BY THE COURT THAT the motion to dismiss by defendant Josie Norris (Doc. # 60) is granted, and plaintiff's claims against Dr. Norris are dismissed, although plaintiff is granted leave to amend his complaint to allege facts to support such claims as set forth herein.

IT IS FURTHER ORDERED THAT the motion for summary judgment by defendants Correct Care Solutions ("CCS"), Dale Davis, Fred Cannon, Kim Palmer, and Adam Edelman (as sued in his official capacity only) (Doc. # 87) is denied without prejudice. Plaintiff is granted leave to amend his complaint to allege facts to support claims against these defendants as set forth herein.

IT IS FURTHER ORDERED THAT the Magistrate Judge shall appoint counsel for plaintiff. Such counsel shall file plaintiff's amended complaint within 30 days after appointment. Defendants shall file answers or otherwise respond within 20 days

thereafter.  The Magistrate Judge shall issues orders sufficient to provide for discovery by the parties.

IT IS SO ORDERED.

Dated this 30th  day of May, 2008, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge